IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

WILLIAM A. HUGHES )
and NANCY L. RICHMOND, )
)
Plaintiffs, ) TC-MD 110903N
)
v. )
)
MULTNOMAH COUNTY ASSESSOR, )
)
Defendant. ) **DECISION**

Plaintiffs appeal Defendant's disqualification of 3.75 acres of property identified as

Account R531277 (subject property) from forestland special assessment for the 2011-12 tax

year. (Ptfs' Compl at 2.) The parties filed cross motions for summary judgment and oral

argument was held by telephone on January 27, 2012. Plaintiffs appeared on their own behalves.

Lindsay Kandra (Kandra), Assistant County Counsel, appeared on behalf of Defendant. On

February 2, 2012, the court issued an Order granting in part and denying in part Defendant's

Motion for Summary Judgment, and denying Plaintiffs' Motion for Summary Judgment. The

court's Order granted Defendant's Motion for Summary Judgment with respect to the issue of

whether the disqualification may be deferred or cancelled for the purpose of allowing Plaintiffs

additional time to qualify for a different special assessment program. The court's Order found

that issues of material fact existed such that the summary judgment was inappropriate on the

issue of whether the disqualification from forestland special assessment was in error.

Trial in the matter was held in the Tax Courtroom in Salem, Oregon on February 23,

2012. Plaintiffs appeared on their own behalves. William A. Hughes (Hughes) testified on

behalf of Plaintiffs. Kandra appeared on behalf of Defendant. Karla Hartenberger

(Hartenberger), registered farm/forest appraiser and exemption specialist, testified on behalf of

DECISION TC-MD 110903N                                                                      1

Defendant. Plaintiffs' Exhibits 1 through 9 and Defendant's Exhibits A through J were received without objection.

## I. STATEMENT OF FACTS

Plaintiffs filed an application for forestland special assessment with Defendant on March 26, 1987, and their application was approved. (Ptfs' Second Decl at Ex 1.) Plaintiffs' 1987 application indicates that "there [was] a forest management plan for [the subject property]." (*Id.*) In 2002, Plaintiffs filed a "response * * * to a questionnaire" from Defendant, which stated that Defendant was "reviewing all properties with designated forest land to ensure they still meet the requirements for a forest deferral." (*Id.* at Ex 3.) Plaintiffs indicated on the questionnaire that there was not a "forest management plan" for the subject property. (*Id.*) Plaintiffs' response to the question "what [are you] doing to ensure proper growth of your trees" states "[r]emoval of deciduous trees and deadfall and thinning to promote growth of fir and cedar. Planting fir seedlings in open areas where appropriate." (*Id.*)

On June 22, 2011, Defendant sent to Plaintiffs a notice disqualifying the subject property from forestland special assessment. (Ptfs' Compl at 2.) The notice of disqualification states that the subject property was disqualified because:

> "The land is no longer in a qualifying use and has been disqualified from * * * Designated Forestland, ORS 321.359(1)(b)(C), western Oregon; Note: It has come to our attention that either The City or County Planning Department has applied one of the following Environmental Overlays to your property: (c), (p). These overlays have restrictions such that the property no longer meets the definition of forestland."

(*Id.*)

The subject property "is zoned RF - Residential Farm/Forest" and it "lies within two City environmental overlay zones: the Environmental Protection Zone and the Environmental Conservation Zone." (Def's Mot for Summ J at 2.) In the environmental overlay zones,

"continued agricultural uses" are allowed "if there is evidence of historic and ongoing agricultural activity. If such evidence cannot be provided, any tree removal from the property must meet the Environmental Plan Check Standards in PCC 33.430.140[1] or be approved by the City through a Type II or Type III Environmental Review." (*Id.*) Plaintiffs note that "[t]he RF zone allows agriculture as a primary use" and that " '[a]griculture' includes forestry and tree farming." (Ptfs' Resp and Cross Mot for Summ J at 1.) Hughes testified that the environmental overlays have been in place since the mid-1990s. (*Id.* Ex 2 at 1.)

Hughes testified that Plaintiffs purchased the subject property in 1978 and built a home in 1979 and 1980 and an outbuilding several years later. He testified that Plaintiffs had been interested in the Skyline Drive area prior to purchasing the subject property because he liked the area and because he wanted to build a "passive" home and utilize solar energy. Hughes testified that the subject property included a clearing that had previously been used as a staging area for logging and that is where the home was built. (*See* Ptfs' Ex 7 (map and aerial photograph of the subject property).) He testified that the character of the neighborhood at the time that Plaintiffs purchased the subject property was primarily rural; houses were a lot smaller and the minimum lot size was (and continues to be) two acres. Hughes testified that Plaintiffs originally considered subdividing the subject property lot at some point and selling part of it to help pay for the education of their children and their retirement. He testified that Plaintiffs determined that to be unfeasible due to the two acre lot size requirement. Hughes testified that Plaintiffs' next idea was to make some money for their retirement from sustainably harvesting trees on the subject property.

/ / /

---

[1] The Code of the City of Portland, Oregon (PCC).

Hughes testified that he believes Plaintiffs could satisfy the requirements for commercial harvest under the environmental overlays; specifically, he believes Plaintiffs could prove "historic and ongoing harvesting of trees." (*See* Ptfs' Ex 3 at 2; Ptf's Cross Mot for Summ J at 4.) Hughes testified that the subject property was originally logged in the 1800s and again in the 1940s. He testified that trees on the subject property are between 60 and 90 years old. Hughes testified that the subject property includes old logging roads and, shortly after Plaintiffs purchased the subject property, they ran a "Cat" down the logging roads to clear them. He testified that, in subsequent years, Plaintiffs have kept the roads clear and removed debris. Hughes testified that Plaintiffs have cut down dead and dying trees and maintained the health of existing trees on the subject property. (*See* Ptfs' Ex 8 (photographs of the logging road and of a stump after removal of a damaged tree).) He testified that he talked with a logging company that confirmed the roads can be used. Hughes testified that Plaintiffs do not have a written forest management plan; it is their understanding that a written forest management plan is not required because the subject property meets the minimum acreage and stocking requirements. He testified that Plaintiffs do not have any written documents from the State Forester regarding the subject property.

Hughes testified that there has been some commercial harvesting of trees in the neighborhood. He testified that, shortly before the environmental overlays were placed, there was quite a bit of tree-cutting as property owners sought to ensure that they would be able to cut trees in the future. Hughes testified that, about one month before trial, he contacted a commercial logging company and received a bid; Plaintiffs would receive about 50 percent of the proceeds of any tree harvested on the subject property.

/ / /

Hughes testified that the subject property meets the minimum acreage requirement, the stocking requirements, and the "trees of a marketable species" requirement. Hartenberger testified that she agrees that the subject property meets those requirements; the only issue is whether Plaintiffs' predominant purpose is the growing and harvesting trees of a marketable species. Hartenberger testified that she disqualified the subject property because she determined that it no longer meets the requirements of forestland special assessment. Hartenberger testified that the environmental overlays greatly restrict the ability of property owners to cut trees within the zone; property owners must seek special approval from the city.

Hughes testified that, in 2002, the environmental overlay had been in place for several years and Plaintiffs' practices with respect to the subject property have not changed since that time. Hughes asked Hartenberger what is different about 2011 as compared with 2002 that caused Defendant to disqualify the subject property in 2011. Hartenberger testified that she did not know and that Defendant's disqualification is based on its determination that the subject property no longer meets the definition of "forestland."

## II. ANALYSIS

The issue before the court is whether the disqualification of 3.75 acres of the subject property from forest special assessment was in error. Hughes stated that he considers a second issue to be whether the disqualification was improper given that the subject property conditions have remain unchanged since 2002, when the subject property was re-qualified by Defendant, and given that the environmental overlays have been in place since the 1990s. Plaintiffs characterize this as "double jeopardy" and argue based on fairness. The court will first address Plaintiffs' argument that disqualification was improper because there have been no changes to the subject property or applicable zoning since 2002, when the subject property was re-qualified.

A.    *Re-qualification in 2002*

Under Oregon law, "[w]hen land has once been designated as forestland[,] * * * it shall be valued as such until the assessor removes the forestland designation under paragraph (b) of this subsection." ORS 321.359(1)(a). [2] It falls to the assessor to determine if property meets the requirements to be designated forestland. "The county assessor shall remove the forestland designation upon * * * [d]iscovery by the assessor that the land is no longer forestland[.]" 321.359(1)(b)(C). The use of the term "shall" in the statutes indicates a mandatory action that the assessor must follow. The statutes do not provide criteria to make that determination; however, the statutes provide a remedy to property owners who think the assessor has acted in error. ORS 321.359(2) states that "a taxpayer whose forestland has had the designation thereof removed in whole or in part, may appeal to the tax court within the time and in the manner provided in ORS 305.404 to 305.560."

Plaintiffs argue that the issue of whether the disqualification of subject property was improper is controlled by Defendant's re-qualification of the subject property in 2002 and lack of any material changes to the subject property or applicable zoning since 2002. "It has long been held in Oregon tax cases that each tax year stands alone; thus, each tax year is its own cause of action." *Safley v. Jackson County Assessor and Dept. of Rev.*, TC-MD No 091206C, WL 4923355 at *5 (Dec 2, 2010), citing *U.S. Bancorp v. Dept. of Rev.*, 15 OTR 13, 15 (1999). Defendant's re-qualification of the subject property in 2002 is not controlling for the 2011-12 tax year at issue in this appeal.

/ / /

/ / /

---

[2] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to the 2009 editions unless otherwise noted.

B.    *Disqualification*

ORS 321.257(2) provides the applicable definition of western Oregon "forestland":

" 'Forestland' means land in western Oregon that is being held or used for the predominant purpose of growing and harvesting trees of a marketable species and has been designated as forestland or land in western Oregon, the highest and best use of which is the growing and harvesting of such trees."

"[A] preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. As the party seeking affirmative relief, Plaintiffs have the burden of proof to establish that they qualify for forestland special assessment. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue* 4 OTR 302, 312 (1971).

Defendant argues that, under ORS 321.257(2), there are two ways to meet the definition of "forestland": One is to establish that the predominant purpose of the property owner is to grow and harvest trees of a marketable species; the other is to establish that the highest and best use of the property is the growing and harvesting of trees of a marketable species. With respect to the highest and best use as forestland, this court has stated:

"While some land may be used as forestland, its highest and best use may be another or additional use. The highest and best use of any particular parcel depends upon what is allowed by the zoning or land use laws as well as by the characteristics of the property."

*Kliewer v. Dept. of Rev.* (*Kliewer*), 15 OTR 139, 142 (2000).[3] The court in *Kliewer* further stated that "[i]f the highest and best use of the property was forestland, it never should have been designated forestland in the first place." *Id.* at 146. The court did not receive any reliable evidence concerning the highest and best use of the subject property. Thus, the issue is whether Plaintiffs' predominant purpose was growing and harvesting trees of a marketable species.

---

[3] *Kliewer* interpreted ORS 321.257(3) (1997), which has been renumbered to ORS 321.257(2).

Plaintiffs' stated purpose with respect to the subject property has changed over time. Hughes testified that Plaintiffs wanted to build a "passive" home and utilize solar energy when he purchased the property. Plaintiffs built a home on the subject property in 1979 and 1980 and an additional outbuilding several years later. Hughes testified that Plaintiffs originally considered subdividing the subject property at some point and selling part of it to help pay for the education of their children and their retirement. Hughes testified that, after determining that plan to be unfeasible, Plaintiffs decided to make money by sustainably harvesting trees on the subject property and Plaintiffs applied for forestland designation in 1987.

Plaintiffs understand Defendant's disqualification to be based on its interpretation of the environmental overlays as prohibiting timber harvest. (Ptfs' Resp and Cross Mot for Summ J at 2.) Plaintiffs argue that the environmental overlays do not "bar [P]laintiffs from using [the subject property] as forestland." (*Id.* at 3.) Plaintiffs concede that the City of Portland "might" require Plaintiffs to "obtain an environmental review before they harvest commercial timber on [the subject] property." (*Id.*) Plaintiffs note that the City of Portland allows Plaintiffs "to maintain their property as forestland and harvest trees if they can document historic use of the property for forestland." (*Id.* at 4.) Plaintiffs believe that they can satisfy the requirement of "historic use" and conclude that "[i]t is thus likely that [P]laintiffs would be able to obtain City permission to continue forest operations on [the subject] property." (*Id.*)

In *Tucker v. Lane County Assessor*, the county assessor disqualified the property at issue based on "deed restrictions that prohibit and/or restrict the harvesting of trees, prohibit any commercial or industrial use to the land and is restricted to a residential use." TC-MD No 080902D, WL 88120 at *1 (Jan 14, 2009) (internal quotations omitted). The county assessor argued that "is not reasonable to assume harvest is possible, thus a predominate purpose, when it

is at the discretion of neighboring land owners, by committee approval, for harvesting trees of greater than a 12 inch diameter and the outright restriction of the harvesting of trees over a 40 inch diameter or trees buffering a neighboring parcel." *Id.* (internal quotations omitted). The court agreed with the county assessor, finding that the deed restrictions "interfere[] with the legislative purpose of the forestland special assessment program" and do "not permit [the taxpayers] to hold or use the [property at issue] 'for the predominant purpose of growing and harvesting trees.' " *Id.* at *3.

The environmental overlays greatly restrict the harvest of trees on the subject property. Hughes testified that Plaintiffs believe they would be able to gain permission from the city to harvest trees, but have not taken steps to receive such permission. Plaintiffs' only inquiry into the commercial harvesting of trees on the subject property came one month before trial in this matter when the Plaintiffs contacted a commercial logging company. In support of his belief that Plaintiffs could establish historic use and harvest trees on the subject property, Hughes testified that Plaintiffs' have maintained logging roads, cut down dead and dying trees, and maintained the health of the trees on the subject property. Hughes testified that the last commercial harvest of trees on the subject property occurred in the 1940s and that the trees are 60 to 90 years old. Plaintiffs have not engaged in commercial logging activities on the subject property.

Taken alone, Plaintiffs' lack of tree harvesting activities on the subject property since purchasing it in 1978 does not preclude a finding that Plaintiffs' predominant purpose was "the growing and harvesting of trees of a marketable species." *E.g.*, *Ferrero v. Clackamas County Assessor*, TC-MD No 080984D, WL 2086012 at *3, *4 (Jun 24, 2009) (finding that the property at issue qualified for forestland special assessment despite the fact that "the trees [had] not been harvested since [the 1970s] except for storm-damaged trees"). When considered in light of the

environmental overlay restrictions on harvest, the court is not persuaded that Plaintiffs' predominant purpose is "the growing and harvesting of trees of a marketable species." The parties agree that, under the environmental overlays, Plaintiffs cannot harvest trees without either establishing "historic and ongoing" harvesting activity or approval by the City of Portland under a "Type II or Type III Environmental Review." Hughes testified that Plaintiffs believe it would be possible to obtain permission from the city to harvest trees based on the "historic use" of the subject property. However there is no evidence in the record that the Plaintiffs have received such permission or attempted to receive such permission. Plaintiffs' only inquiry into the possibility of harvesting trees on the subject property occurred about one month before trial, well after the environmental overlays were placed on the subject property.

Plaintiffs have failed to prove by a preponderance of the evidence that their predominant purpose was to hold or use the subject property for growing and harvesting trees of a marketable species or that harvesting trees is possible on the subject property.

### III. CONCLUSION

After careful consideration of the testimony and evidence presented, the court finds that Plaintiffs have not established by a preponderance of the evidence that the subject property is "forestland" within the meaning of ORS 321.257(2). The environmental overlays restrict Plaintiffs' ability to harvest trees on the subject property and Plaintiffs have not presented persuasive evidence that they may harvest trees under those restrictions. Now, therefore,

/ / /

/ / /

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

IT IS FURTHER DECIDED that the disqualification of the subject property may not be deferred or cancelled for the purpose of allowing Plaintiffs additional time to qualify for a different special assessment program.

Dated this ___ day of July 2012.

ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on July 10, 2012. The Court filed and entered this document on July 10, 2012.*